Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
Attorney for Plaintiff and the Proposed Class

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
MEDFORD DIVISION

| | |
|---|---|
| Sharon McCullagh, individually and on behalf of other similarly situated.<br><br>　　Plaintiff,<br><br>v.<br><br>SmartMatch Insurance Agency, LLC<br><br>and<br><br>Interest Media, Inc.<br><br>　　Defendants. | No.<br>1:25-cv-174<br><br><br>FIRST AMENDED<br>CLASS ACTION COMPLAINT<br>TCPA (47 U.S.C. § 227)<br>DEMAND FOR JURY TRIAL |

Plaintiff Sharon McCullah, individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of their counsel, and on information and belief, as follows:

## NATURE OF ACTION

1.　　Nature of Action: "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the

law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 649 (4th Cir. 2019).

    2.    "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id*. at 649-50.

    3.    Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendants for violations of the Telephone Consumer Protection Act,

47 U.S.C. § 227 ("TCPA") for making telemarketing calls, including text messages, to numbers on the National Do Not Call Registry, including her own.

## PARTIES

4. Plaintiff resides in this District, in Lake County.

5. Defendant SmartMatch Insurance Agency, LLC is a Missouri limited liability company.

6. Defendant Interest Media, Inc. is a Missouri Corporation which does business in Oregon and directed its illegal calling conduct into Oregon by sending its calls to and using Oregon area codes.

## JURISDICTION AND VENUE

7. This Court has federal SmartMatchion jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

8. This Court has personal jurisdiction over SmartMatch and Interest because Interest made telemarketing calls into this District for SmartMatch's benefit, to ultimately sell SmartMatch's goods and services in this District.

9. Venue is proper pursuant to 28 U.S.C. §§ 1391(b)(2) because the telephone calls at issue were sent into this District.

## TCPA BACKGROUND

The National Do Not Call Registry

10. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

11. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

12. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## FACTUAL ALLEGATIONS

13. Defendants are "persons" as the term is defined by 47 U.S.C. § 153(39).

14. Ms. McCullagh's telephone number, (541) XXX-XXXX, is a residential telephone number.

15. Ms. McCullagh telephone number has been on the National Do Not Call Registry since July of 2024.

16. Despite this, Ms. McCullagh received at least 13 telemarketing calls from Defendant Interest Media at SmartMatch's direction.

17. The calls were made for the purpose of offering Medicare supplemental health insurance.

18. The Plaintiff indicated that she was not interested on the first three calls that Interest Media placed.

19. Despite that, she still received the subsequent calls.

20. SmartMatch relies on telemarketing to generate new customers through vendors it uses, like Interest Media.

21. SmartMatch, though its parent company, Spring Venture Group, hired Interest Media to contact "End Consumers . . . via telephone" and then "transfer a Qualified Call [as defined by SmartMatch's criteria] to [SmartMatch] so that [SmartMatch] (through one of its licensed agents) can provide such End Consumer with insurance information."

22. Indeed, both Interest Media and SmartMatch have previously been sued in lawsuits alleging violations of the TCPA.

23. The Plaintiff did not consent to telemarketing calls from the Defendants.

24. The Plaintiff never did business with the Defendants.

25. The calls were not necessitated by an emergency.

26. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

27. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

28. The FCC has instructed that sellers such as SmartMatch may not avoid liability by hiding behind third party agents and outsourcing telemarketing to third parties, such Interest Media:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent'

marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

29. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

30. SmartMatch is liable for Defendant Interest Media's conduct and telemarketing calls placed by Interest Media and transferred to SmartMatch and its agents to generate customers for SmartMatch and its agents, including the Plaintiff.

31. Moreover, with full knowledge that Interest Media was being sued in TCPA litigation and violating multiple parts of its agreement SmartMatch, together with applicable addenda, including, but not limited to, failing to comply with the TCPA do not call registry and consent provisions included therein, SmartMatch did nothing.

32. SmartMatch thus had full knowledge of Interest Media's illegal conduct, and did not terminate or discipline them, thus implicitly ratifying their actions and endorsing their illegal behavior, including, upon information and belief, not even terminating Interest Media and continuing to work with Interest Media during the pendency of this lawsuit.

33. The aforementioned facts also demonstrate that SmartMatch failed to supervise Interest Media or enforce their compliance with applicable laws and regulations.

34. SmartMatch was interested in hiring a lead generator that could make phone calls to potential customers, vet potential clients, and only sell them the interested ones.

35. To do so, SmartMatch hired Interest Media to orchestrate an *en masse* telemarketing campaign that explicitly called for Interest Media to contact customers by telephone.

36. SmartMatch controlled all aspects of that campaign made for its benefit, including requiring record keeping systems, screenshots, and call recordings, and at least 11 additional criteria, including specifying the state criteria (like Oregon), age, verified name, and other criteria that SmartMatch required Interest Media to collect in order to "qualify" a customer and pay for a "cost per lead" transfer.

37. SmartMatch also directed that all of Interest Media's services were to be performed in the United States or through subcontractors located in the United States.

38. In so doing, SmartMatch controlled the day-to-day activities of Interest Media by providing the specific criteria for the leads it would accept and required Interest Media to adhere to those criteria.

39. SmartMatch also retained the right to return non-confirming leads and receive a refund.

40. Indeed, SmartMatch's relationship with Defendant Interest Media contains numerous hallmarks of agency which were memorialized in a lead generation "Master Services" agreement, with multiple addenda.

41. For example, SmartMatch, who the agreement describes as a company that "desires to purchase leads for various products and services," hired Interest Media, who the agreement describes as a "company specializing in lead generation."

42. The agreement also provided that Interest Media was a "Business Associate" of SmartMatch for purposes of HIPAA.

43. As such, SmartMatch controlled the content of Interest Media's telemarketing.

44. Finally, SmartMatch could have terminated Interest Media.

45. It did not.

46. By virtue of identifying the leads that they would accept and directing the conduct and other indicia of the calls at issue described above, SmartMatch directed Interest Media and the content, method, and criteria of the communications that Interest Media would use in their calling.

47. A reasonable seller like SmartMatch whose agents are making calls would investigate into the reasons why their agents and telemarketers would be calling telephone numbers on the do not call registry without consent, let alone why Interest Media would continue to call people after they asked the calls to stop.

48. It did not.

49. SmartMatch hired Interest Media without a proper investigation and did not terminate them when they were informed of Interest Media's illegal calling conduct.

50. As such, they knowingly ratified Interest Media's conduct.

51. SmartMatch also ratified Interest Media's conduct because, with knowledge that the call was an illegal call that was made to a number on the Do Not Call Registry, to a customer that had already expressed a desire for the calls to stop, they accepted the Plaintiff's lead and tried to sell the Plaintiff SmartMatch's insurance services.

52. SmartMatch accepted the Plaintiff's lead and then utilized it for a benefit by continuing to promote its services to her.

53. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such

information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

54. The aforementioned calls to the Plaintiff were unwanted.

55. The calls were nonconsensual encounters.

56. The calls were made in an attempt to sell the Plaintiff Medicare supplemental health insurance.

57. Plaintiff does not have any need for Medicare supplemental health insurance.

58. Plaintiff's privacy has been violated by the above-described telemarketing calls.

59. Plaintiff never provided her consent or requested the calls. In fact, she asked for them to stop.

60. Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Defendants because their privacy has been violated, they were annoyed and harassed, and, in some instances, they may have been charged for incoming calls. Plaintiff and the Class Members were also harmed by use of their telephone power and network bandwidth and the intrusion on their telephone that occupied it from receiving legitimate communications.

## CLASS ACTION ALLEGATIONS

61. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

62. Plaintiff brings this action on behalf of herself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3) and Oregon Local Rule 23-2.

63. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **Interest Media National Do Not Call Registry Class:** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Interest Media or a third party acting on Interest Media's behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.
>
> **SmartMatch National Do Not Call Registry SubClass:** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Interest Media or a third party acting on Interest Media's behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint; (5) that advertised, or were intended to advertise, SmartMatch's goods and services.
>
> **Internal DNC Class:** All persons within the United States to whom: (1) Defendants (or a third-party acting on behalf of Defendants) sent (2) two or more telemarketing calls or text messages in a 12-month period, (3) who were not current customers of the Defendants at the time of the calls, (4) who had previously asked for the calls to stop and (5) within the four years prior to the filing of the Complaint.

64. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Classes as she has no interests that conflict with any of the Class members.

65. Excluded from the Classes are counsel, Defendants, and any entities in which Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

66. Plaintiff and all members of the Classes have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

67. This Class Action Complaint seeks injunctive relief and money damages.

Am. Complaint                                                      10

68. The Classes as defined above, are identifiable through Defendants' dialer records, other phone records, and phone number databases.

69. Plaintiff does not know the exact number of members in each of the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds.

70. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

71. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

72. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

73. There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including, but not limited to, the following:

   (a) Whether Defendants made multiple calls to Plaintiff and members of the National Do Not Call Registry Class;
   (b) Whether Defendants made calls to numbers on the Internal Do Not Call Registry Class;
   (c) The corresponding degrees of liability as between and among the Defendants;
   (d) Whether Defendants' conduct constitutes a violation of the TCPA; and
   (e) The availability of statutory penalties.

74. Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests which are antagonistic to any member of the Classes.

75. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and her counsel are

committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

76. Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendants and/or their agents.

77. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## FIRST CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act
(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do Not Call Registry Class)**

78. Plaintiff incorporates the allegations from all previous paragraphs 1–40 as if fully set forth herein.

79. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227. by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

80. Defendants' violations were negligent, willful, or knowing.

81. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 and

in damages for each and every call made and up to $1,500 in damages if the calls are found to be willful.

## SECOND CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the Internal DNC Class)

82. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

83. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the Internal Do Not Call Class despite previously requesting that such calls stop.

84. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

85. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Internal Do Not Call Class are entitled to an award of up to $500 and in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

B. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

C. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Dated: June 6, 2025            Respectfully submitted,

> s/Andrew Roman Perrong
> Andrew Roman Perrong, OSB No. 243320
> a@perronglaw.com
> Perrong Law LLC
> 2657 Mount Carmel Avenue
> Glenside, PA 19038
> 215-225-5529 (CALL-LAW)
> Lead Attorney for Plaintiff and the Proposed Class

> s/Anthony Paronich
> Anthony Paronich, Mass. BBO No. 678437
> (*Pro Hac Vice*)
> anthony@paronichlaw.com
> Paronich Law, P.C.
> 350 Lincoln Street, Suite 2400
> Hingham, MA 02043
> 617-485-0018
> Attorney for Plaintiff and the Proposed Class