**George S. Pitcher, OSB #963982**
George.Pitcher@wilsonelser.com
**Rachel Robinson, OSB #084550**
Rachel.Robinson@wilsonelser.com
**Maryn Sommerfeldt, OSB #244842**
Maryn.Sommerfeldt@wilsonelser.com
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3030
Facsimile: 971.352.3019
*Attorneys for Defendant Interest Media, Inc.*

**Michael Alltmont, *admitted Pro Hac Vice***
malltmont@wilsonelser.com
SESSIONS, ISRAEL, & SHARTLE, LLC
3838 N. Causeway Blvd., Ste. 2800
Metairie, Louisiana 70002
Telephone: 504.846.7954
Facsimile: 504.828.3737
*Attorneys for Defendant SmartMatch
Insurance Agency, LLC.*

Hon. Mark D. Clarke

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| **SHARON MCCULLAGH,** | Case No. 1:25-cv-00174-CL |
| Plaintiff, | DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS AND TO STRIKE CLASS ALLEGATIONS |
| vs. | |
| **SMARTMATCH INSURANCE AGENCY, LLC,** and **INTEREST MEDIA, INC.,** | Request for Oral Argument |
| Defendants. | |

## <u>TABLE OF CONTENTS</u>

LR 7-1 CERTIFICATION ................................................................................................ 1

MOTIONS ....................................................................................................................... 1

INTRODUCTION ............................................................................................................ 2

FACTUAL BACKGROUND ............................................................................................ 2

    A.   Interest Media and the Site ................................................................................. 2

    B.   Plaintiff visited the Site and agreed to the Site's Terms of Use, which included a mandatory arbitration provision and a class action waiver. ........................................ 3

        1.   Plaintiff agreed to the Site's Terms of Use when she registered with the Site. .............. 3

        2.   The Site's Terms of Use contained an arbitration agreement and a class action waiver. 5

        3.   Plaintiff provided additional personal information, consented to calls from SmartMatch after registering with the Site, and again consented to the Terms of Use. ............................... 6

        4.   Interest Media provided the lead to SmartMatch. ................................................... 9

ARGUMENT ................................................................................................................... 9

    A.   Motion 1: The Court should compel arbitration and stay the case. .................................. 9

        1.   Legal standard ............................................................................................... 9

        2.   Plaintiff entered into a valid Arbitration Agreement. .................................................. 11

        3.   Plaintiff's claims fall within the ccope of the Arbitration Agreement and, nevertheless, questions of arbitrability have been delegated to the arbitrator. ........................................... 17

    B.   Motion No. 2: The Court should strike the class allegations under Federal Rules of Civil Procedure 12(f) and 23(c). ..................................................................................... 18

        1.   Legal standard ............................................................................................... 18

        2.   Plaintiff's allegations reveal that individualized issues predominate, making a class action inappropriate. ..................................................................................................... 19

CONCLUSION ............................................................................................................... 20

**Wilson Elser Moskowitz Edelman & Dicker LLP**
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3026 • Fax 971.352.3019

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Hallmark Ins. Co. of Texas v. Encadria Staffing Sols. LLC*,
    618 F. Supp. 3d 1070 (D. Or. 2022) ......................................................................11

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011) ......................................9

*Bennett v. Farmers Ins. Co. of Or.*,
    332 Or. 138, 26 P.3d 785 (Or. 2001) ...................................................................11

*Berman v. Freedom Fin. Network, LLC*,
    30 F.4th 849 (9th Cir. 2022) ..............................................................13, 14, 15, 16

*Cashatt v. Ford Motor Co.*,
    No. 3:19-cv-05886, 2021 U.S. Dist. LEXIS 56724 (W.D. Wash. Mar. 24,
    2021) .......................................................................................................................18

*Chabolla v. ClassPass Inc.*,
    129 F.4th 1147 (9th Cir. 2025) ............................................................................14

*Chiron Corp. v. Ortho Diagnostic Sys. Inc.*,
    207 F.3d 1126 (9th Cir. 2000) .............................................................................10

*Dobbs v. Health IQ Ins. Services, Inc.*,
    No. 21-5276, 2022 U.S. Dist. LEXIS 133182 (E.D. Pa. July 27, 2022)................12

*Dohrmann v. Intuit, Inc.*,
    823 Fed. Appx. 482 (9th Cir. 2020).................................................................13, 16

*Edmundson v. Klarna, Inc.*,
    85 F.4th 695 (2d Cir. 2023) ..................................................................................14

*Falcon v. TelevisaUnivision Digital, Inc.*,
    No. 8:23-cv-02340-TPB-UAM, 2024 U.S. Dist. LEXIS 57331 (M.D. Fla.
    Mar. 29, 2024)..................................................................................................13, 14

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)......................................11

*Fteja v. Facebook, Inc.*,
    841 F.Supp.2d 829, 837 (S.D.N.Y. 2012) ............................................................13

*Fuqua v. Kenan Advantage Group*,
    No. 3:11-cv-01463-ST, 2012 U.S. Dist. LEXIS 95852 ........................................................10

*Godun v. JustAnswer LLC*,
    135 F.4th 699 (9th Cir. 2025) ................................................................................................14

*Hines v. Overstock.com, Inc.*,
    668 F. Supp. 2d 362, 366-67 (E.D.N.Y. 2009) ......................................................................13

*Howsam v. Dean Witter Reynolds*,
    537 U.S. 79, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002)...................................................10, 17

*Jeong v. Nexo Cap. Inc.*,
    No. 21-CV-02392-BLF, 2022 U.S. Dist. LEXIS 150413 (N.D. Cal. Aug. 22,
    2022) ......................................................................................................................................19

*Keebaugh v. Warner Bros. Ent. Inc.*,
    100 F.4th 1005 (9th Cir. 2024) ...............................................................................13, 14, 15

*Lee v. Ticketmaster L.L.C.*,
    817 Fed. Appx. 393 (9th Cir. 2020)......................................................................................16

*Lundbom v. Schwan's Home Serv., Inc*,
    No. 3:18-CV-02187-IM, 2020 U.S. Dist. LEXIS 91577 (D. Or. May 26, 2020)...................14

*Mantolete v. Bolger*,
    767 F.2d 1416 (9th Cir. 1985) ...............................................................................................19

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017)..............................................................................................13, 14

*Mohamed v. Uber Technologies, Inc.*,
    848 F.3d 1201 (9th Cir. 2016) .........................................................................................10, 17

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*,
    460 U.S. 1, 24, 103 S. Ct. 927, 74 L.Ed.2d 765 (1983)...........................................................9

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) .............................................................................12, 13, 14, 15

*Oberstein v. Live Nation Entm't, Inc.*,
    60 F.4th 505 (9th Cir. 2023) ...........................................................................................10, 16

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
    724 F.3d 1069 (9th Cir. 2013) .................................................................................................9

**Wilson Elser Moskowitz Edelman & Dicker LLP**
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3026 • Fax 971.352.3019

*Ortega v. Barrett Bus. Servs., Inc.*,
    No. 2:16-CV-00368-SU, 2016 U.S. Dist. LEXIS 127336 (D. Or. Aug. 19,
    2016), *report and recommendation adopted,* 2016 U.S. Dist. LEXIS 126995
    (D. Or. Sept. 19, 2016) ...................................................................................................10

*Porteous v. Flowers Foods, Inc.*,
    766 F. Supp. 3d 1093 (D. Or. 2025) .........................................................................10, 19

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393, 403 (2d Cir. 2004) ...................................................................................12

*Rent-A-Center, W., Inc. v. Jackson*,
    561 U.S. 63, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010) ...........................................11, 17

*Republic of Nicaragua v. Standard Fruit Co.*,
    937 F.2d 469, 475 (9th Cir. 1991) ...................................................................................10

*Rowland v. Sandy Morris Fin. & Est. Plan. Services, LLC*,
    993 F.3d 253 (4th Cir. 2021) ...........................................................................................12

*Sanders v. Apple Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) .............................................................................18

*Sanders v. Apple Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) .............................................................................18

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716, 720 (9th Cir. 1999) ...................................................................................10

*Smith v. Spizzirri*,
    601 U.S. 472, 144 S. Ct. 1173, 218 L. Ed. 2d 494 (2024) ...............................................18

*Sollars v. City of Milwaukie*,
    222 Or. App. 384, 1963 P.3d 75 (Or. Ct. App. 2008) ......................................................11

*Temple v. Best Rate Holdings LLC*,
    360 F. Supp. 3d 1289 (M.D. Fla. 2018) ...........................................................................15

*The Erection Co. v. W & W Steel, LLC*,
    No. CV 11-805-JE, 2011 U.S. Dist. LEXIS 121581 (D. Or. Oct. 20, 2011),
    *aff'd*, 513 Fed. Appx. 664 (9th Cir. 2013) .......................................................................11

*Whitt v. Prosper Funding LLC*,
    No. 1:15-cv-136-GHW, 2015 U.S. Dist. LEXIS 91413 (S.D.N.Y. July 14,
    2015) ................................................................................................................................3

*Zoller v. GCA Advisors, LLC*,
    993 F.3d 1198 (9th Cir. 2021) .........................................................................................10

**Wilson Elser Moskowitz Edelman & Dicker LLP**
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3026 • Fax 971.352.3019

**Statutes**

9 U.S.C. § 1 .................................................................................................................1

9 U.S.C. § 2 .................................................................................................................9

9 U.S.C. § 3 ...........................................................................................................1, 18

9 U.S.C. § 4 ...............................................................................................................10

47 U.S.C. § 227 ....................................................................................................1, 2, 6

**Rule**

Fed. R. Civ. P. 5.2 ......................................................................................................7

Fed. R. Civ. P. 12(b)(1) ...............................................................................................1

Fed. R. Civ. P. 12(f) ..............................................................................................1, 18

Fed. R. Civ. P. 23 ......................................................................................................18

Fed. R. Civ. P. 23(b)(3) .............................................................................................19

Fed. R. Civ. P. 23(c) .............................................................................................1, 18

Fed. R. Civ. P. 23(c)(1)(A) ........................................................................................18

Fed. R. Civ. P. 23(d) .................................................................................................18

Fed. R. Civ. P. 23(d)(1)(D) ........................................................................................18

Fed. R. Evid. 201 ........................................................................................................5

**Wilson Elser Moskowitz Edelman & Dicker LLP**
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3026 • Fax 971.352.3019

## **LR 7-1 CERTIFICATION**

Counsel for Defendants SmartMatch Insurance Agency, LLC ("SmartMatch") and Interest Media, Inc. ("Interest Media") (collectively, "Defendants") certify that they conferred in good faith on the issues raised in these motions with counsel for Plaintiff Sharon McCullagh ("Plaintiff") by telephone on September 11, 2025, but the parties were unable to resolve the disputes.

## **MOTIONS**

**Motion No. 1:** Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA"), and Federal Rule of Civil Procedure 12(b)(1), Defendants move this Court for an order compelling Plaintiff to arbitrate the claims in her First Amended Complaint (Dkt. No. 19) and to stay the proceedings pending arbitration pursuant to section 3 of the FAA. The Court should compel arbitration of the claims because Plaintiff agreed to arbitrate them when she registered on Interest Media's website and accepted the website's Terms of Use, which included a mandatory arbitration provision.

**Motion No. 2:** Pursuant to Federal Rules of Civil Procedure 12(f) and 23(c), Defendants also move to strike the class allegations from Plaintiff's First Amended Complaint (Dkt. No. 19). The Terms of Use, which Plaintiff accepted on Interest Media's website, bar Plaintiff from asserting claims "as a plaintiff or class member in any purported class or representative action or proceeding, including but not limited to actions under the Telephone Consumer Protection Act, 47 U.S.C. § 227[.]" In addition, Plaintiff cannot show that issues of law and fact common to the class predominate over issues involving individual class members.

/ / /

/ / /

These motions are supported by the Court's records and files, the factual background and argument below, and the Declarations of Rachel A. Robinson and Jeremy Matthew Hoggatt, filed herewith.

## INTRODUCTION

Plaintiff filed this putative class action seeking to hold Defendants liable under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*., for alleged unsolicited telemarketing/sales calls and text messages to her personal phone, which Plaintiff claims is registered on the National Do Not Call Registry. Plaintiff claims the contacts began on the morning of September 30, 2024, which was shortly after SmartMatch, an insurance agency, received a lead relating to Plaintiff's phone number ((541) 417-2942) from Interest Media. Interest Media provided the lead to SmartMatch after Plaintiff visited one of Interest Media's websites, voluntarily agreed to the website's Terms of Use, and consented to calls and texts from SmartMatch. The Terms of Use included a mandatory arbitration provision, so the Court should compel arbitration and stay the proceedings. The Court should strike the class allegations based on the class action waiver in the Terms of Use and also the fact that the allegations show that individual issues predominate, making a class action inappropriate.

## FACTUAL BACKGROUND

### A.    Interest Media and the Site

Interest Media is a marketing company that provides advertising and customer acquisition services to clients through user-facing websites. Declaration of Jeremy Matthew Hoggatt ("Hoggatt Decl."), ¶ 2. One of the user-facing websites that Interest Media owns and operates is FreeSamplesProUSA.com (https://freesamplesprousa.com/) (the "Site"). *Id.* at ¶ 3. Individuals have the ability to register on the Site and then answer survey questions to get

**Wilson Elser Moskowitz Edelman & Dicker LLP**
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3026 • Fax 971.352.3019

matched with samples and offers that fit their needs. *Id.* at ¶ 4. When an individual registers on the Site, the personal data the user provides, the IP address from which the Site is accessed, and information about the user's response to the survey questions are automatically saved to an Interest Media database. *Id.*

**B.** **Plaintiff visited the Site and agreed to the Site's Terms of Use, which included a mandatory arbitration provision and a class action waiver.**

On the evening of September 29, 2024 (pacific coast time), Plaintiff registered with the Site and agreed to the Site's Terms of Use, which included a mandatory arbitration provision and a class action waiver. *Id.* at ¶¶ 6-9. In connection with her response to a Medicare survey question after she registered with the Site, Plaintiff also consented to receive calls and texts from SmartMatch. *Id.* at ¶¶ 13-14.

**1.** **Plaintiff agreed to the Site's Terms of Use when she registered with the Site.**

To access samples and offers on the Site at the time Plaintiff's visited it, a user had to register with the Site. Hoggatt Decl., ¶ 7. To do that, a user had to enter their email address into an email field on the Site's registration page and then click a "Continue" button. *Id.* Immediately below the "Continue" button was consent language about the Site's Terms of Use. *Id.* That consent language stated:

> By clicking 'Continue', I agree to receive relevant emails from FreeSamplesProUSA and its partners. I also agree to the Privacy Policy which includes details on the collection and use of my personal data, and the Terms of Use which includes a mandatory arbitration provision, and this site's use of site visit recording technology provided by TrustedForm, Jornaya and Lucky Orange.

*Id.*

Below is a screenshot of the registration section of the Site, as it existed at the time of Plaintiff's registration:



*Id.*

A user could not proceed further on the Site without agreeing to and accepting the Terms of Use by clicking "Continue." *Id.* The Terms of Use were hyperlinked to the page, and the hyperlink was distinguished from the surrounding black text by having the words "Terms of Use" in blue text that was underlined. Hoggatt Decl., ¶¶ 7-8.

On the evening of September 29, 2024 (pacific coast time), Plaintiff visited the Site, entered her email address (valintino1951@gmail.com) in the email address field box on the registration page, and hit the "Continue" button above the Terms of Use consent language. *Id.* at

Page 4 – DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS AND TO STRIKE CLASS ALLEGATIONS
319914984v.2

**Wilson Elser Moskowitz Edelman & Dicker LLP**
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3026 • Fax 971.352.3019

¶¶ 6-7, 9-11; *see also*, Hoggett Decl., Ex. A. The IP address that was automatically recorded in

Interest Media's database in connection with Plaintiff's site registration was 131.150.126.113.

Hoggett Decl., ¶ 9; *see also*, Hoggatt Decl., Ex. A. Publicly available online resources trace that

IP address back to Lakeview, Oregon, a small city in Oregon (less than 3,000 residents) that

prior court records identify as Plaintiff's city of residence. Hoggatt Decl., ¶ 9; *see also,*

Declaration of Rache A. Robinson ("Robinson Decl."), Exs. A-C.[1]

### 2.    The Site's Terms of Use contained an arbitration agreement and a class action waiver.

The Terms of Use contained a binding arbitration agreement (the "Arbitration

Agreement") and a class action waiver (the "Class Action Waiver"). Hoggatt Decl., ¶ 8; *id.* at

Ex. B, pp. 1, 4. Notice of the Arbitration Agreement and the Class Action Waiver were provided

on the first page of the Terms of Use. Hoggatt Decl., Ex. B, p.1. That notice stated:

## Notice of Agreement to Arbitrate and Class Action Waiver

> By accepting these Terms, you agree to the agreement to arbitrate and
> class action waiver contained in Section 5 of these Terms below

*Id.* (bolded and increased header font size in original).

The Arbitration Agreement and Class Action Waiver themselves were located in

section five of the Terms of Use. *Id.* at Ex. B, p. 4. That section provided, in relevant part,

as follows:

## 5. AGREEMENT TO ARBITRATE

> You and we each agree that any and all disputes or claims with or
> against any party that relate to or arise from your use of or access
> to the Website, or any products or services sold, offered, or
> purchased through the Website shall be resolved exclusively
> through final and binding arbitration, rather than in court, except

---

[1] Defendants request that the Court take judicial notice of the population of Lakeview, Oregon
under Federal Rule of Evidence 201.

**Wilson Elser Moskowitz Edelman & Dicker LLP**
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3026 • Fax 971.352.3019

that you may assert claims in small claims court, if your claims qualify. The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate section (this "Agreement to Arbitrate").

### Prohibition of Class and Representative Actions and Non-Individualized Relief

You and we agree that each of us may bring claims that relate to or arise from your use of or access to the Website, or any products or services sold, offered, or purchased through the Website only on an individual basis and not as a plaintiff or class member in any purported class or representative action or proceeding, including but not limited to actions under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. or the California Invasion of Privacy Act, Cal. Penal Code § 630 et seq. Unless both parties agree otherwise, the arbitrator may not preside over any form of a consolidated, class, or representative proceeding or otherwise consolidate or join claims from more than one person or party. The arbitrator may grant injunctions or other relief, including monetary, and declaratory relief, only in favor of the individual party seeking such relief and only to such extent as may be necessary to provide relief necessitated by that party's individual claim(s). No relief awarded shall affect our other users.

### Arbitration Procedures

The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement to Arbitrate, any part of it, or of this Agreement including, but not limited to, any claim that all or any part of the Agreement to Arbitrate or this Agreement is void or voidable.

*Id*. at Ex. B, p. 4 (bolded and increased header font size in original).

3.      **Plaintiff provided additional personal information, consented to calls from SmartMatch after registering with the Site, and again consented to the Terms of Use.**

After a user registered with the Site and clicked the "Continue" button, indicating their acceptance of the Terms of Use, new pages would appear where a user had an opportunity to provide additional personal information, including their first and last name, phone number,

**Wilson Elser Moskowitz Edelman & Dicker LLP**
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3026 • Fax 971.352.3019

address, date of birth, and gender. Hoggatt Decl., ¶ 10. The following information was entered in

connection with those pages after Plaintiff's site registration:

> First Name: Sharon
> Last Name: McCullagh
> Phone Number: 5414172942
> Street Address: 1063 S K St
> State: OR
> Zip code: 97630
> Gender: Female

*Id*. at ¶¶ 10-11; *see also,* Hoggatt Decl., Ex. A. A 1951 birthdate was also provided.[2] Hoggatt Decl.,

¶ 11.

After providing the requested information and clicking another "Continue" button, the

user would be asked a series of survey questions. *Id*. at ¶ 12. The survey questions covered a

number of topics, such as brands the user had purchased within a certain period of time, whether

the user had certain medical conditions, and the user's Medicare status. *Id*. One of the survey

questions that was asked in connection with Plaintiff's Site visit was:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[2] A full birthdate was provided. Only the birth year is provided in connection with this motion to comply with Federal Rule of Civil Procedure 5.2.

Page 7 – DEFENDANTS' MOTION TO COMPEL
ARBITRATION AND STAY PROCEEDINGS AND TO STRIKE
CLASS ALLEGATIONS
319914984v.2

**Wilson Elser Moskowitz Edelman & Dicker LLP**
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3026 • Fax 971.352.3019



*Id*. at ¶ 13.

        Immediately below those five green buttons was the following language:

> By clicking "Medicare Parts A&B" "Medicare Supplement" "Medicare Advantage" or "Medicare & Medicaid", I provide my express written consent via this webform to initiate a chat interaction for a licensed sales agent associated with SmartMatch Insurance Agency LLC to contact me via chat, text, or call at 5414172942, even if the phone number provided is on the National Do Not Call registry, regarding products or services, including Medicare Supplement, Medicare Advantage, Prescription Drug insurance plans, and other health-related services. I consent to being contacted via chat, a live, automated dialing system telephone call, SMS text, or email. I understand this request has been initiated by me and that this is an unscheduled contact request where I am requesting information immediately. I understand my telephone company may impose charges on me for these contacts and am not required to enter into this agreement as a condition of any purchase or service. I further understand that this request, initiated by me, is my affirmative consent to be contacted which is in compliance with all federal and state telemarketing and Do-Not-Call laws. Licensed Sales Agents are not connected with or endorsed by the U.S. government or the federal Medicare program. I agree to the Privacy Policy and Terms of Use. Please note this is a solicitation for insurance. No obligation to enroll.

*Id*.

**Wilson Elser Moskowitz Edelman & Dicker LLP**
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3026 • Fax 971.352.3019

Plaintiff pushed the "Medicare Advantage" button, consenting to calls from SmartMatch and, again, agreeing to the Terms of Use. *Id.* at ¶¶ 13-14.

### 4. Interest Media provided the lead to SmartMatch.

A lead with Plaintiff's contact information was provided to SmartMatch as a result of her Medicare response. Hoggatt Decl., ¶ 15; *see also*, Hoggatt Decl., Ex. A. The lead was automatically provided to SmartMatch in real time, meaning it was provided to SmartMatch right after Plaintiff's interaction with the Site. *Id.*

Plaintiff claims the calls and texts to her began on September 30, 2024. Robinson Decl., Ex. D. Interest Media did not place any calls or texts to Plaintiff on behalf of SmartMatch in connection with that lead from the Site and did not hire anyone to place any such calls or texts to Plaintiff. Hoggatt Decl., ¶ 16.

### ARGUMENT

### A. Motion 1: The Court should compel arbitration and stay the case.

### 1. Legal standard

Under the Federal Arbitration Act ("FAA"), written contracts to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA embodies a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011) (citation omitted); *see also*, *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) (citing *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L.Ed.2d 765 (1983)).

Under that policy, the FAA, which governs the parties' Arbitration Agreement here, "requires courts to compel arbitration of claims covered by an enforceable arbitration

**Wilson Elser Moskowitz Edelman & Dicker LLP**
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3026 • Fax 971.352.3019

agreement." *Oberstein v. Live Nation Entm't, Inc.*, 60 F.4th 505, 510 (9th Cir. 2023) (citing 9 U.S.C. § 4); *see also*, Hoggatt Decl., Ex. B, p. 4 ("The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate section (this "Agreement to Arbitrate')."); *Fuqua v. Kenan Advantage Group*, No. 3:11-cv-01463-ST, 2012 U.S. Dist. LEXIS 95852, at *12 (D. Or. Apr. 13, 2012 (citing *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991)) (additional citation omitted) (explaining that the FAA applies to "agreements 'involving commerce[,]'" meaning it applies to "the full reach of the commerce clause").

"Generally, a court must determine two issues before deciding whether to compel arbitration: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Zoller v. GCA Advisors, LLC*, 993 F.3d 1198, 1201 (9th Cir. 2021) (citations omitted); *see also*, *Porteous v. Flowers Foods, Inc.*, 766 F. Supp. 3d 1093, 1097 (D. Or. 2025) (quoting *Chiron Corp. v. Ortho Diagnostic Sys. Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp.*, 207 F.3d at 1130; *see also, Ortega v. Barrett Bus. Servs., Inc*., No. 2:16-CV-00368-SU, 2016 U.S. Dist. LEXIS 127336, at *7 (D. Or. Aug. 19, 2016), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 126995 (D. Or. Sept. 19, 2016) (citing *Simula, Inc. v. Autoliv, Inc*., 175 F.3d 716, 720 (9th Cir. 1999)) ("Under the FAA, if a court is satisfied that a valid arbitration agreement applies to the claims at issue, the court must order arbitration."). Where there is "[c]lear and unmistakable evidence of an agreement to arbitrate arbitrability," issues of arbitrability are to be decided by the arbitrator, not the court. *Mohamed v. Uber Technologies, Inc.,* 848 F.3d 1201, 1208 (9th Cir. 2016) (citations omitted); *see also, Howsam v. Dean Witter Reynolds*, 537 U.S.

79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002) (citations omitted); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010) (citations omitted).

Here, the Court should compel arbitration because (1) the Arbitration Agreement is a valid agreement to arbitrate and (2) it covers Plaintiff's claims and, in any event, issues of arbitrability are reserved for the arbitrator under the terms of the Arbitration Agreement. Plaintiff agreed to the Arbitration Agreement in the Terms of Use, so she is bound by it.

### 2.    **Plaintiff entered into a valid Arbitration Agreement**.

"When deciding whether the parties agreed to arbitrate a certain matter … , courts generally … should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995). "Oregon follows the objective theory of contracts; that is, the existence of a contract does not depend on the parties' uncommunicated subjective understanding but on their objective manifestations of intent to agree to the same express terms." *Sollars v. City of Milwaukie*, 222 Or. App. 384, 388, 1963 P.3d 75 (Or. Ct. App. 2008) (citations omitted); *see also Am. Hallmark Ins. Co. of Texas v. Encadria Staffing Sols. LLC*, 618 F. Supp. 3d 1070, 1077–78 (D. Or. 2022) (explaining that "the manifestation of mutual assent to an exchange ordinarily takes the form of an offer or proposal by one party followed by an acceptance by the other party or parties" and that, under "the objective theory, the manifestation of acceptance made to an offeror results in a contract, regardless of the intent of the party that manifests acceptance") (citations omitted); *Bennett v. Farmers Ins. Co. of Or.*, 332 Or. 138, 154, 26 P.3d 785, 795 (Or. 2001) ("[T]he law requires only evidence of 'mutual assent,' whether that assent is expressed through an offer and an acceptance or is manifested by conduct."); *The Erection Co. v. W & W Steel, LLC,* No. CV 11-805-JE, 2011 U.S. Dist. LEXIS 121581, at *20 (D. Or. Oct. 20, 2011), *aff'd*, 513 Fed. Appx.

**Wilson Elser Moskowitz Edelman & Dicker LLP**
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3026 • Fax 971.352.3019

664 (9th Cir. 2013) ("Mutual assent may be inferred from the conduct of the parties.") (citations omitted).

Over the past two decades, courts have clarified how the traditional tests for contract formation apply online. Federal appellate courts have explained that, "[a]lthough 'new commerce on the Internet has exposed courts to many new situations' – and opened up useful new tools through which contracting parties can communicate – 'it has not fundamentally changed the principles of contract.'" *Rowland v. Sandy Morris Fin. & Est. Plan. Services, LLC*, 993 F.3d 253, 260 (4th Cir. 2021) (quoting *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004)); *see also, Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) (quoting the same language from *Register.com, Inc.*). "In the context of [the internet], the occurrence of mutual assent ordinarily turns on whether the consumer had reasonable notice of the … terms of service agreement." *Dobbs v. Health IQ Ins. Services, Inc.*, No. 21-5276, 2022 U.S. Dist. LEXIS 133182, at *8 (E.D. Pa. July 27, 2022); *see also, Nguyen*, 763 F.3d at 1177 (explaining that, in the absence of evidence of a user's actual knowledge of an agreement, "the validity of the … agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract").

The Ninth Circuit has recognized that contracts formed on the internet fall across a spectrum. On one end of the spectrum is a "clickwrap" agreement, also known as a "click-through" agreement, which requires the user to manifest consent to the terms by affirmatively "click[ing] on an 'I agree' box after being presented with a list of terms and conditions of use." *Nguyen*, 763 F.3d at 1175 (citing *Register.com, Inc.*, 356 F.3d at 403). At the other end of the spectrum is a "browsewrap" agreement, which "does not require the user to manifest assent to the terms of the website expressly[;]" "the website's terms and conditions of use are generally

posted on the website via a hyperlink at the bottom of the [website]" and "a party … gives his assent simply by using the website." *Nguyen*, 763 F.3d at 1176 (citing *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 366-67 (E.D.N.Y. 2009)); *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022).

Courts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of the agreement by clicking on an acknowledgment of the terms. *See Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) (applying California law) (citing *Fteja v. Facebook, Inc.*, 841 F.Supp.2d 829, 837 (S.D. N.Y. 2012) (collecting cases)); *Whitt v. Prosper Funding LLC*, No. 1:15-cv-136-GHW, 2015 U.S. Dist. LEXIS 91413, *10-12 (S.D.N.Y. July 14, 2015) (collecting cases).

Courts also "have enforced 'hybrid browsewrap agreements,' described as 'browsewrap agreements that resemble clickwrap agreements in that they require the user "to affirmatively acknowledge the agreement before proceeding with the use of the website,"['] often by clicking a button to create an account, sign up for a subscription, or complete an order." *Falcon v. TelevisaUnivision Digital, Inc.*, No. 8:23-cv-02340-TPB-UAM, 2024 U.S. Dist. LEXIS 57331, at *5 (M.D. Fla. Mar. 29, 2024); *see also*, *e.g., Dohrmann v. Intuit, Inc.*, 823 Fed. Appx. 482 (9th Cir. 2020) (holding arbitration agreement in terms of use enforceable where website required user to click a "Sign In" button and directly under the button was language that indicated that clicking the button constituted agreement to the terms of use, which were accessible via a hyperlink). The rationale for enforcing hybrid agreements is that they "weigh[ ] in favor of valid notice" because a user must "affirmatively acknowledge the agreement before proceeding with

use of the website." *Falcon*, 2024 U.S. Dist. LEXIS 57331, at *5 (citing *Nguyen*, 763 F.3d at 1176-77).

When evaluating an internet agreement under an "inquiry theory of notice," the focus is on the notice given to the user of the terms and whether the user took some action that manifests consent. Under an inquiry notice theory, a contract is formed between a website user and operator "where (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *See Godun v. JustAnswer LLC*, 135 F.4th 699, 709 (9th Cir. 2025); *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025).

Both requirements are satisfied here. The Site provided conspicuous notice of the Terms of Use and Plaintiff manifested assent to the Terms of Use by clicking the "Continue" button on the registration page after entering her email.

### a) <u>The Site provided reasonably conspicuous notice of the terms to which Plaintiff was to be bound.</u>

In evaluating whether a website provides reasonably conspicuous notice of the terms to which the consumer will be bound, courts apply an objective reasonableness standard, viewing the website through the lens of a "reasonably prudent [i]nternet user." *See Berman*, 30 F.4th at 857 (citing *Nguyen*, 763 F.3d at 1177, 1179); *see also, Keebaugh*, 100 F.4th at 1018; *Lundbom v. Schwan's Home Serv., Inc*., No. 3:18-CV-02187-IM, 2020 U.S. Dist. LEXIS 91577, at *17 (D. Or. May 26, 2020) (quoting *Meyer*, 868 F.3d at 79) ("As long as the hyperlinked text was itself reasonably conspicuous … a reasonably prudent smartphone user would have constructive notice of the terms."); *Edmundson v. Klarna, Inc*., 85 F.4th 695, 704 (2d Cir. 2023) ("Courts have viewed the reasonably prudent user as somewhere in between; such a user is not a complete

**Wilson Elser Moskowitz Edelman & Dicker LLP**
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3026 • Fax 971.352.3019

stranger to computers or smartphones, having some familiarity with how to navigate to a website or download an app."); *Temple v. Best Rate Holdings LLC*, 360 F. Supp. 3d 1289, 1304 (M.D. Fla. 2018) (finding reasonable notice of agreement where "Plaintiff was cautioned that clicking the 'Get a Quote' button would indicate his acceptance to the Agreement available via the Terms and Conditions Hyperlink"). Because the court's "inquiry notice standard demands conspicuousness tailored to the reasonably prudent Internet user, not the expert user, the design of the hyperlinks must put such a user on notice of their existence." *Berman*, 30 F.4th at 857 (citing *Nguyen*, 763 F.3d at 1179).

Here, before being able to access samples and offers through the Site, Plaintiff was required to enter her email address and then click the "Continue" button on the Site's registration page. *See* Hoggatt Decl., ¶¶ 6-7, 9-11. Immediately below the "Continue" button was the following language, which provided notice that clicking the "Continue" button constituted consent the Site's Terms of Use, which included a mandatory arbitration provision:

> By clicking 'Continue', I agree to receive relevant emails from FreeSamplesProUSA and its partners. I also agree to the <u>Privacy Policy</u> which includes details on the collection and use of my personal data, and the <u>Terms of Use</u> which includes a mandatory arbitration provision, and this site's use of site visit recording technology provided by TrustedForm, Jornaya and Lucky Orange.

*Id*. at ¶ 7.

The statement includes bright blue underlined text for "Terms of Use," which contrasts with both the surrounding background and the adjacent black text. *Id*. at ¶¶ 7-8. The blue color also draws attention to the fact that the text is a hyperlink. *See id*.; *see also*, *Keebaugh*, 100 F.4th at 1017 (noting that blue is "the color typically used to signify the presence of a hyperlink" in text). Further, the Terms of Use provide explicit notice of the Arbitration Agreement through both the bolded "**Notice of Agreement to Arbitrate and Class Action Waiver**" header on the

**Wilson Elser Moskowitz Edelman & Dicker LLP**
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3026 • Fax 971.352.3019

first page of the Terms of Use and the bolded and all caps "**AGREEMENT TO ARBITRATE**" header in the section five (the Arbitration Agreement section) of the Terms of Use. Hoggatt Decl., ¶ 8; *id.* at Ex. B, pp. 1, 4.

When presented with a nearly identical agreement in *Dohrmann*, the Ninth Circuit Court of Appeals held that the reasonably conspicuous notice requirement was satisfied. The Court stated: "[t]he relevant warning language and hyperlink to the Terms of Use were conspicuous – they were the only text on the webpage in italics, were located directly below the sign-in button, and the sign-in page was relatively uncluttered." *Dohrmann*, 823 Fed. Appx. at 484. Similarly, in *Lee v. Ticketmaster L.L.C.*, 817 Fed. Appx. 393-95 (9th Cir. 2020), the Ninth Circuit Court of Appeals held that there was a valid arbitration agreement where there was language near "Sign In" and "Place Order" buttons that advised that proceeding constituted agreement to the website's terms of use; the phrase "terms of use" was in blue text; and the terms of use were available via hyperlink. *Id.* at 393-95.

Like in *Dohrmann* and *Lee*, the Site provided Plaintiff reasonably conspicuous notice of the terms to which she would be bound. Thus, the Arbitration Agreement should be enforced.

### b) The Site required Plaintiff to take an action that unambiguously manifested her assent to the Terms of Use.

"The second part of the [inquiry notice theory] test—whether the user takes some action that unambiguously manifests assent—is relatively straightforward." *Oberstein*, 60 F.4th at 515. "A user's click of a button can be construed as an unambiguous manifestation of assent … if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Id.* at 515 (citing *Berman*, 30 F.4th at 857) (additional cite omitted).

On the Site, Plaintiff was required to enter her email and click "Continue" to access samples and offers. Hoggatt Decl., ¶¶ 6-7, 9-11. As noted above, immediately below the

**Wilson Elser Moskowitz Edelman & Dicker LLP**
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3026 • Fax 971.352.3019

"Continue" button was a statement that advised that clicking the "Continue" button constituted agreement to the Site's Terms of Use. *Id.* at ¶ 7. The language was clear and was in close proximity to the "Continue" button (*i.e.*, the mechanism for manifesting acceptance), where Plaintiff would easily see it. *See id.* at ¶¶ 7, 9-11. When Plaintiff clicked "Continue," she affirmatively expressed her agreement to the Terms of Use, including the Arbitration Agreement. *See id.* Accordingly, a valid agreement to arbitrate exists and Plaintiff is bound by the Arbitration Agreement.

### 3. **Plaintiff's claims fall within the ccope of the Arbitration Agreement and, nevertheless, questions of arbitrability have been delegated to the arbitrator.**

Plaintiff's TCPA claims fall within broad scope of the arbitration agreement, which states as follows:

> You and we each agree that any and all disputes or claims with or against any party that relate to or arise from your use of or access to the Website, or any products or services sold, offered, or purchased through the Website shall be resolved exclusively through final and binding arbitration[.]

Hoggatt Decl., ¶ 8; *id.* at Ex. B, p. 4. Nevertheless, any questions about whether Plaintiff's claims fall within the scope of the arbitration agreement must be resolved by the arbitrator, not this Court.

Parties to an arbitration agreement may "agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc.*, 561 U.S. at 68–69 (citations omitted). If parties to an arbitration agreement have "clear[ly] and unmistakab[ly]" agreed to delegate issues of arbitrability to the arbitrator, then the court cannot override that intention, and the arbitrator must decide these threshold issues. *See Mohamed*, 848 F.3d at 1208 (citations omitted); *Howsam*, 537 U.S. at 83.

**Wilson Elser Moskowitz Edelman & Dicker LLP**
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3026 • Fax 971.352.3019

Here, the Arbitration Agreement clearly and unequivocally delegates all questions of arbitrability to the arbitrator. The Arbitration Agreement provides:

> The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement to Arbitrate, any part of it, or of this Agreement including, but not limited to, any claim that all or any part of the Agreement to Arbitrate or this Agreement is void or voidable.

Hoggatt Decl., ¶ 8; *id*. at Ex. B, p. 4.

Because the Arbitration Agreement applies, this case must be stayed pending arbitration.

*Smith v. Spizzirri*, 601 U.S. 472, 474, 144 S. Ct. 1173, 218 L. Ed. 2d 494 (2024); 9 U.S.C. § 3.

**B.    Motion No. 2: The Court should strike the class allegations under Federal Rules of Civil Procedure 12(f) and 23(c).**

**1.    Legal standard**

Federal Rule of Civil Procedure 12(f) allows courts to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Federal Rule of Civil Procedure 23(c) states that "[a]t an early practicable time … , the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). Rule 23(d) allows courts to order "that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). Courts have stricken class allegations in a complaint before discovery. *Cashatt v. Ford Motor Co.*, No. 3:19-cv-05886, 2021 U.S. Dist. LEXIS 56724, at *2–3 (W.D. Wash. Mar. 24, 2021) ("Courts in this circuit have cut off class actions when little-to-no discovery had taken place."); *see also Sanders v. Apple Inc.,* 672 F. Supp. 2d 978, 989–90 (N.D. Cal. 2009) ("Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery.") The burden

**Wilson Elser Moskowitz Edelman & Dicker LLP**
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3026 • Fax 971.352.3019

is on the plaintiff to "advanc[e] a prima facie showing that the class action requirements of Federal Rule of Civil Procedure 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." *Mantolete v. Bolger,* 767 F.2d 1416, 1424 (9th Cir. 1985).

    **2.**    <u>**Plaintiff's allegations reveal that individualized issues predominate, making a class action inappropriate.**</u>

To maintain a class action, the plaintiff must show that issues of law and fact common to the class predominate over issues involving individual class members. Fed. R. Civ. P. 23(b)(3). Where the right to recover is predominated by individual issues, policy considerations compel the striking of class allegations at the pleading stage.

As explained above, a user must agree to Interest Media's Terms of Use, which includes an Arbitration Agreement and Class Action Waiver. Hoggatt Decl., ¶¶ 7-11. That Class Action Waiver itself precludes Plaintiff's claims. *See, e.g., Porteous*, 766 F. Supp. 3d at 1106–07 (striking class allegations on waiver grounds); *Jeong v. Nexo Cap. Inc.*, No. 21-CV-02392-BLF, 2022 U.S. Dist. LEXIS 150413, at *45-50 (N.D. Cal. Aug. 22, 2022) (same); *see also*, Hoggatt Decl., ¶¶ 7-11. Moreover, Plaintiff's class definition includes no consideration of whether putative class members would be subject to the Arbitration Agreement and Class Action Waiver such that they would be excluded from the class definitions. If they are not, the proceedings would devolve into mini-trials to make that individualized determination. For this reason, Plaintiff's class allegations should be stricken.

/ / /

/ / /

/ / /

/ / /

Page 19 – DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS AND TO STRIKE CLASS ALLEGATIONS

319914984v.2

**Wilson Elser Moskowitz Edelman & Dicker LLP**
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3026 • Fax 971.352.3019

## <u>CONCLUSION</u>

The Court should compel arbitration of Plaintiff's claims and stay this action because

Plaintiff agreed to arbitration via Interest Media's website. The Court also should strike the class

action allegations based on the Class Action Waiver in the Terms of Use and because individual

issues predominate.

DATE: September 12, 2025.

WILSON ELSER MOSKOWITZ EDELMAN &
DICKER LLP

By: <u>s/  Rachel Robinson</u>
George S. Pitcher, OSB #963982
Rachel Robinson, OSB #084550
Maryn Sommerfeldt, OSB #244842
Email: George.Pitcher@wilsonelser.com
      Rachel.Robinson@wilsonelser.com
      Maryn.Sommerfeldt@wilsonelser.com

*Attorneys for Defendant Interest Media, Inc.*

SESSIONS, ISRAEL, & SHARTLE, LLC

By: <u>s/  Michael Alltmont</u>
Michael Alltmont, admitted *Pro Hac Vice*
Email: malltmont@sessions.legal

*Attorneys for Defendant SmartMatch
Insurance Agency, LLC*