Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
Attorney for Plaintiff and the Proposed Class

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## MEDFORD DIVISION

| | | |
|---|---|---|
| Sharon McCullagh, individually and on behalf of other similarly situated. | : :| No. 1:25-cv-174 |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | OPPOSITION TO MOTION |
| | : | TO COMPEL ARBITRATION AND TO |
| SmartMatch Insurance Agency, LLC | : | STRIKE CLASS CLAIMS |
| | : | TCPA (47 U.S.C. § 227) |
| and | : | DEMAND FOR JURY TRIAL |
| | : | |
| Interest Media, Inc. | : | |
| | | |
| Defendants. | | |
| _____/ | | |

## Introduction

Defendants SmartMatch Insurance Agency, LLC and Interest Media, Inc. have filed a motion to compel arbitration based on a purported website visit that Ms. McCullagh never visited or submitted her information to. Because Ms. McCullagh did not agree to arbitrate her claims against either Defendant, Defendants' motion should be denied. Plaintiff's declaration submitted herein confirms she never visited the FreeSamplesUSA website, never saw any of its "Terms," and never agreed to arbitrate with *anyone*, let alone with these Defendants. Her declaration denies any site visit, explains that, at the time Defendants claim she "registered," she likely would have been asleep, and confirms she has no browsing history for either date.

Further demonstrating the improper nature of the relief they request, Defendants ask this Court to compel arbitration based on terms purportedly presented on a promotional website, FreeSamplesProUSA.com, *that does not even name either Defendant*. Defendants' own motion confirms the supposed contract was the "Site's Terms of Use," i.e., FreeSamplesProUSA.com's "Terms And Conditions," ECF No. 27-2, which they say included a "mandatory arbitration provision." But those Terms identify the "Company" as "freesamplesprousa.com." A domain name is not a juridical person and cannot contract. Defendants are not named, which again ends the inquiry. Ninth Circuit law provides a third reason for denying Defendants' motion, as it is legally deficient on at least two bases. The aforementioned deficiencies, as well as others, show that the purported arbitration contract is unenforceable as a matter of Ninth Circuit law, and that, relatedly, there exist uniform class issues that do not warrant striking the class claims.

## Legal Standard

In evaluating a motion to compel arbitration in a TCPA case, the Federal Arbitration Act ('FAA'), 9 U.S.C. § 1 *et seq*., governs the enforceability of an arbitration agreement. That statute

commands that before compelling arbitration of a dispute, the Court must first be satisfied that the parties agreed to arbitrate. 9 U.S.C. § 4 (directing that courts must direct the parties to arbitration "upon being satisfied that the making of the agreement for arbitration . . . is not in issue"); *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 716 (9th Cir. 2020). Once an enforceable agreement has been established, that is, once a court has determined that there is an agreement to arbitrate, the court must only then turn to whether the particular dispute factually and legally falls within the scope of the agreement. *In re Van Dusen*, 654 F.3d 838, 843 (9th Cir. 2011). The consensus of Ninth Circuit authority is that, like a Rule 56 Motion for Summary Judgment, the Court must view all inferences in the light most favorable to the non-movant and grant the motion only if no reasonable juror could hold that the parties did not agree to arbitrate. *See Jenkins-Brown v. Liberty Acquisitions Servicing, LLC*, No. 03:14-CV-01610-ST, 2015 WL 1757220, at *4 n.2 (D. Or. Apr. 16, 2015) (collecting authority). Under that standard, "An unequivocal denial that" the parties agreed to arbitrate, "accompanied by supporting affidavits," is sufficient to require jury determination on whether the parties agreed to arbitrate. *Interocean Shipping Co. v. National Shipping & Trading Corp.*, 462 F.2d 673, 676 (2d Cir. 1972) (applying Rule 56 standard to arbitration). In such a case, the non-moving party has placed "the question in issue" by showing a material issue of fact on whether the parties had an agreement to arbitrate, and the issue must be decided at a summary jury trial as provided by Section 4 of the FAA. *Id.*

Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "While a Rule 12(f) motion provides the means to excise improper materials from pleadings, such motions are generally disfavored because the motions may be used as delaying tactics and because of the strong policy favoring resolution on the merits." *Barnes v. AT&T Pension Ben. Plan-*

*Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010). The court views the pleading in the light most favorable to the nonmovant and denies if there is doubt. *Id.*

### Argument

A.   *There is no agreement to arbitrate because the Plaintiff has provided evidence showing that she never visited the website and thus never agreed to arbitrate.*

"Arbitration is a matter of consent, not coercion." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664 (2010). The Supreme Court has held time and time again that, despite the liberal policy favoring arbitration, "consent" remains a "first principle that underscores" all arbitration decisions. *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019). Consent is essential under the FAA because arbitrators wield only the authority they are given. *Id.* The Defendants are not entitled to invoke any arbitration clause against Plaintiff because the factual question of whether she even agreed as a matter of contract is called into issue, as Plaintiff's declaration points out, with admissible factual evidence showing that she never visited the FreeSamplesProUSA website. Under Section 4 of the Federal Arbitration Act, a jury *must* decide this as a threshold to the threshold arbitrability matter, regardless of delegation, and jurisdiction lies with the Court on this issue, as confirmed by the Supreme Court in *Coinbase*, *infra*.

The Supreme Court recently addressed the proper procedure to follow when conflicts arise as to the enforceability of arbitration contracts. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 143 (2024). The Supreme Court held that the first question in any arbitration dispute must be what the parties agreed to. *Id.* at 145. The Supreme Court clarified that *this* "fundamental" question is one for the *court*, not the arbitrator, to decide, and is driven by contractual interpretation principles under state contract law. *Id.* In *Coinbase*, the Supreme Court reaffirmed that "where, as here, a challenge applies "equally" to the whole contract and to an arbitration or delegation provision, a *court* must address that challenge." *Id.* at 151 (*quoting Rent-A-Ctr., W., Inc. v.*

*Jackson,* 561 U.S. 63, 71 (2010)). The Court went on to explain that in such cases, just like here, "basic principles of contract and consent require that result. Arbitration and delegation agreements are simply contracts, and, normally, if a party says that a contract is invalid, the court must address that argument before deciding the merits of the contract dispute." *Id.* (quoting *Rent-A-Ctr.*, 561 U.S. at 71 for the proposition that "If a party challenges the validity . . . of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that [arbitration] agreement."). And the explicit text of Section 4 makes it clear that formation is a *jury* issue, "upon such demand the court shall . . . specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed." 9 U.S.C. § 4. As such, a jury trial is necessary to ascertain if the Plaintiff herself submitted her information to the website alleged and thus agreed to arbitrate, as the evidence in support of this is disputed.

Consistent with the "general proposition" that "a contract cannot bind a non-party," *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 9 (1st Cir. 2014), "the FAA does not require parties to arbitrate when they have not agreed to do so," *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). The FAA commands that, before compelling arbitration of a dispute, the Court must first be satisfied that the parties agreed to arbitrate that dispute. 9 U.S.C. § 4; *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute."). And, "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4.

In Oregon, the party arguing the existence of a valid contract to arbitrate bears the burden

of proving the contract existed and was formed, and that the *Plaintiff himself* agreed to be bound by the clause, as a matter of black letter Oregon law. ORS § 36.625(1) (effectively mandating a summary trial akin to FAA section 4 if the "refusing party opposes the petition. . . *showing* an agreement to arbitrate"). "Arbitration arises as a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Bates v. Andaluz Waterbirth Ctr.*, 447 P.3d 510, 513 (Or. App. 2019). And a contract requires "a meeting of the minds of the parties, a standard that is measured by the objective manifestations of intent by both parties to bind themselves to an agreement." *Rick Franklin Corp. v. State ex rel. Dep't of Transp.*, 140 P.3d 1136, 1140 (Or. App. 2006). In the arbitration context, the formation inquiry is done by "applying ordinary rules of contract formation and interpretation." *Bates*, 447 P.3d at 513. *Bates* is instructive. There, our very own Oregon Court of Appeals refused to compel, as a matter of contract law, an arbitration agreement where the decedent did not sign the agreement, nor was the decedent otherwise made a party to the arbitration agreement. *Id.* Similarly, in *Drury v. Assisted Living Concepts, Inc.*, the Court of Appeals held that a third-party non-signatory to the contract "certainly cannot be bound to a contract it did not sign or otherwise assent to." 262 P.3d 1162, 1165 (Or. App. 2011).

The *en banc* Oregon Court of Appeals in *Harnisch v. College of Legal Arts, Inc.*, 259 P.3d 67 (Or. App. 2011) provides a clear example of an Oregon state court affirming denial of a motion to compel arbitration based on disputed contract formation. In that case, a student signed the front of an enrollment agreement but failed to initial the specific arbitration clause on the back, despite a clear request for an initial below the arbitration provision. The trial court found that the "absence of [plaintiff's] initials tells me that she did not agree to this arbitration provision," and the Court of Appeals affirmed, holding that the failure to initial was evidence

that plaintiff did not assent to the arbitration clause. *Id.* at 70. Relatedly, courts across the country are also in agreement that the party seeking to compel arbitration must demonstrate that the party had adequate notice of the arbitration provision. *See, e.g.*, *Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 329 (3d Cir. 2022) ("Because it is plausible that a number of the pharmacies were never given the terms of their Provider Agreements, it is likewise plausible that holding the pharmacies to the arbitration agreements contained therein would be procedurally unconscionable."); *Klocek v. Gateway, Inc.*, 104 F. Supp. 2d 1332, 1335 n.1 (D. Kan. 2000) (noting that Plaintiff had no notice of arbitration clause).

As the parties seeking to arbitrate, the Defendants thus bear the burden of demonstrating, at the same level as at summary judgment, not only that a valid arbitration agreement exists but also that the *Plaintiff herself* agreed to be bound by the clause, of which she had adequate notice, as in *Harnisch. See also Campbell v. Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 552 (1st Cir. 2005). Defendants will be unable to do so because the Plaintiff unequivocally denies ever having submitted her information to the FreeSamplesProUSA website. *See Bates*, 447 P.3d at 513 (denying motion to compel arbitration when the formation of the purported contract was called into question by demonstration that the party sought to be bound did not sign it). And Defendants have presented no additional information or evidence to show that Ms. McCullagh *herself* visited the website or submitted any information at all, such as (for example), by requiring a code to be sent to her phone or providing a credit card. *See Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140 (9th Cir. 1991) (noting that a flipped evidentiary standard "would lead to untenable results. Party A could forge party B's name to a contract and compel party B to arbitrate the question of the genuineness of its signature."). This is sufficient to challenge the validity of the Plaintiff's "signature" or assent to the agreement.

When a plaintiff challenges the validity of a signature on an arbitration agreement, courts in the Ninth Circuit apply a burden-shifting framework. For example, in *Zamudio v. Aerotek, Inc.*, the defendant met its initial burden of showing that an agreement to arbitrate existed (unlike here, for reasons that will be addressed below) by attaching a copy of the arbitration agreement, but the plaintiff challenged the validity of the signature as unauthenticated. 698 F. Supp. 3d 1202, 1206 (E.D. Cal. 2023). In denying the motion to compel, the Court held that it required detailed evidence about the security procedures attendant to the alleged website login on which the arbitration agreement turned. *Id.* In doing so, the court disregarded the defendant's conclusory declaration, as here, that asserted that the plaintiff signed the agreement, without any evidence authenticating the plaintiff or linking the plaintiff's login to the signature. *Id.*

That the purported agreement contained the Plaintiff's name and other publicly available information about Plaintiff accounts for little. At this stage, particularly as this case raises a factual challenge surrounding arbitrability, the Plaintiff is entitled to submit a declaration of her own in support of her position that she did not agree to arbitrate the dispute as an initial matter. *See Hesse v. Midland Credit Mgmt., Inc.*, No. 4:21-CV-00591-SEP, 2022 WL 503725, at *3 (E.D. Mo. Feb. 18, 2022). As the Plaintiff explains in her Declaration, the Plaintiff's information[1] has been publicly available by virtue of court filings, and all of the information allegedly "submitted" by Ms. McCullagh is readily obtained through a simple Google search.

---

[1] What Plaintiff suspects occurred here is that the Plaintiff's information was automatically submitted to Defendant's website using a bot farm. *See A Phone Bot Farm in Action*, REDDIT (June 28, 2024), https://www.reddit.com/r/Damnthatsinteresting/comments/1dqt70g [https://archive.is/ROeIO]. Because companies like SmartMatch pay online advertisers like Interest Media per submission to drive traffic to their websites, advertisers use such "farms" to artificially generate more website submissions and thus more profits in a process akin to artificially stuffing a ballot box. *Lead Gen Fraud: How to Identify and Prevent Fake Leads*, LUNIO (June 13, 2023), https://www.lunio.ai/blog/fake-lead-gen-fraud [https://archive.md/5k31J] ("Lead generation fraud is the use of bots to generate fake leads using misappropriated user data."); *Attribution Fraud*, HITPROBE, https://hitprobe.com/what-is/attribution-fraud [https://archive md/qWebW].

(McCullagh Dec. ¶ 19). Similarly unavailing and insufficient is that the IP address that purportedly submitted Ms. McCullagh's information is located in Lakeview, Oregon. This court has held that, in order to prevail at summary judgment for copyright infringement, for example, a plaintiff "must provide more than an allegation that an IP address is registered to an individual." *Crim. Prods., Inc. v. Bekahi*, No. 3:17-CV-00157-AC, 2018 WL 2306685, at *5 (D. Or. Apr. 2, 2018). Defendants here do not even offer proof that the IP address belongs to Plaintiff.

It is readily apparent that the Defendants are unable to meet the high burden demanded of them at summary judgment of affirmatively demonstrating that the Plaintiff herself agreed to arbitrate her claims, particularly in light of her sworn denial, and the matter must proceed to a summary jury trial. To be clear, the Plaintiff unequivocally denies ever having agreed to arbitrate. On face, considering the Plaintiff's own above declaration and evidence, there exist issues with the evidence proffered by the Defendants, tending to show that the Plaintiff did not agree to arbitrate anything because she didn't even submit any of the information into the website as an initial matter. The Plaintiff confirms these issues and independently verifies that she did not visit the website, had nothing to do with the visit, and thus did not agree to arbitrate anything. (McCullagh Dec. ¶ 11). These factual disputes doom Defendants' assertion of arbitration and entitle Plaintiff to a summary arbitrational jury trial.

Despite the Defendants' faulty evidence which unequivocally demonstrates that they possess no information that the Plaintiff herself submitted the information, and the Plaintiff's own denials, Defendants' motion is rife with the false and unsupported assertion that the "Plaintiff" allegedly agreed to the Site's Terms of Use when she allegedly registered and further that she consented to the calls. But, under well-established TCPA and arbitration law, the Defendants must establish that the Plaintiff *herself*, and not someone else, agreed to arbitrate

claims. *Zamudio*, 698 F. Supp. 3d at 1206; *Starling v. OnProcess Tech., Inc.*, No. 1:23-CV-10949-JEK, 2024 WL 1258501, at *5 (D. Mass. Mar. 25, 2024) (denying arbitration and holding non-signatory family member was not bound by agreement, despite being listed as an alternate contact on account). It is also well established under the TCPA that consent is associated with the *called party* and *not* the *telephone number* at issue. *See, e.g., N. L. by Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164, 1166 (9th Cir. 2020). As such, an intent to contact *someone else* fraudulently using Plaintiff's name and telephone number, who arguably consented to arbitrate, does not compel *Plaintiff* to arbitrate claims to which she did not consent. *Id.* at 1167.

Several decisions in the TCPA context specifically dictate that the Defendants' motion ought to be denied on the basis of the Plaintiff's declaration *alone*. The Middle District of Georgia's decision in *Hobbs v. Apollo Interactive, Inc.*, No. 4:19-CV-57 (CDL), 2019 WL 6878863 (M.D. Ga. Dec. 17, 2019), is particularly instructive. There, a TCPA defendant sought to compel arbitration by contending, as here, that the plaintiff agreed to an arbitration provision as a result of his visits to the defendant's website. In finding no agreement to arbitrate existed based on inconsistencies in the purported website submission, the court explained:

> Plaintiff presented evidence that he "did not visit www.bestautoinsurance.com" and that it would have been impossible for him to access the website in the manner Defendant says he did. . . . Plaintiff stated that he "cannot know for certain who accessed" Defendant's website and input his information, but "[w]hat [he] do[es] know for certain is that [he] did not visit www.bestautoinsurance.com." From this, a reasonable factfinder could determine that Plaintiff did not enter his personal information on Defendant's website or click "submit." So, a reasonable factfinder could conclude that Plaintiff did not assent to the website's terms, including the arbitration provision. Accordingly, there is a genuine fact dispute as to whether Plaintiff entered an arbitration agreement with Defendant, and the Court thus cannot conclude as a matter of law at this stage in the proceedings that the parties had a valid agreement to arbitrate. For this reason, Defendant's motion to dismiss in favor of arbitration is denied.

*Id.* at *1-*2 (cleaned up). The *Hobbs* case is one of several in a long line of cases either denying such motions outright or ultimately concluding that a summary arbitration trial was necessary,

including one with respect to the *very same Defendant here*. *E.g.*, *Woodard v. SmartMatch Ins. Agency, LLC*, No. 23 CV 5246, 2024 WL 4252803, at *3 (N.D. Ill. Sept. 20, 2024) ("Plaintiff's declaration is sufficient to satisfy her evidentiary burden at this stage of the litigation. . . . Because plaintiff has identified facts showing a genuine dispute as to her acceptance of defendant's arbitration agreement, defendant's motion to compel arbitration is denied without prejudice." and setting procedure for arbitration trial); *Gilliam v. Prince Health Grp. LLC*, No. 1:24-CV-00033, 2025 WL 1126545, at *4 (M.D. Tenn. Apr. 16, 2025) ("[O]ther than the fact that Plaintiff's name and phone number were used, Prince Health offers no evidence that Plaintiff was the person who entered the information."); *Kass v. PayPal, Inc.*, 75 F.4th 693, 704 (7th Cir. 2023) (when plaintiff declared that she never received an email with defendant's arbitration terms, she raised a triable issue of fact as to whether a valid arbitration agreement was formed); *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 789 (N.D. Ill. 2011) ("[T]he Court denies Defendants' joint motion to compel arbitration without prejudice because there is a genuine issue of material fact pertaining to whether Plaintiffs ever viewed the enrollment web pages containing the Terms and Conditions upon which Defendants rely.").

The Court in *Conrad v. Camping World Holdings Inc.* reached a similar conclusion, reasoning that the factual question of whether or not the plaintiff opted in to receive text messages from the defendant on a website containing an arbitration provision was put at issue and denied a similar motion to compel arbitration. No. 4:24-CV-171-CLM, 2025 WL 66689, at *2 (N.D. Ala. Jan. 9, 2025). There, the court first agreed that its decision "as to whether an arbitration agreement exists is simply a matter of contract," and that when a party does not "sign or otherwise enter the contract, he cannot be bound by its terms." *Id.* The court noted that the defendant provided no evidence to controvert the plaintiff's declaration, as here, that he did not

agree to arbitrate any claims because he did not own the telephone number at issue at the time of the alleged opt-in, and thus that the defendant could not "show the parties had a meeting of the minds about arbitrating claims related to the CWH text message service." *Id.*

Accordingly, Defendants have and will be unable to meet their burden of demonstrating even a genuine issue of material fact on the arbitration issue, entitling the Plaintiff to wholesale denial of the motion. The court in *Conrad* did the same, holding as a matter of law that the defendant did not meet its burden of demonstrating a disputed factual issue with respect to the claimed provision to so much as justify an arbitration trial. *Id.* And, like in *Hobbs*, the Plaintiff has made similar allegations of faulty arbitrational facts, including her sleeping habits and browsing history that would show she did not visit the website. 2019 WL 6878863 at *1–*2. And because the Plaintiff agreed to nothing, she did not agree to arbitrate or receive calls.

B. *The FreeSamplesProUSA website does not even name the Defendants, nor can the plain language of the arbitration clause be read to require the arbitration of Plaintiff's claims against either Defendant, most especially SmartMatch.*

Second, by its plain terms and very text, the arbitration provision applies to any purported agreement between the website visitor and the mysterious "freesamplesprousa.com" (the "Website", "Company", "us", "we", or "our") which is a website, and not even a legal entity or company. A domain name is not a legal person and cannot contract. It does not extend to any dispute, as here, that Plaintiff has between herself and Interest Media, the alleged website operator, let alone SmartMatch, a third party. The legal issue of whether the agreement can extend to either Defendant is one that *Coinbase* has made clear that this Court must decide. The question of whether an arbitration agreement formed as a matter of law, as here, between Plaintiff and either Defendant is *not* reserved to the arbitrator, even with a purported delegation provision, as here. While the FAA creates a "presumption of arbitrability" such that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," "the

presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016).

The very Terms and Conditions themselves plainly *concede* that they only "form a legally binding agreement between you . . . and the Company." The "terms," at their outset, defines "Company" as "freesamplesprousa.com." Thus, by its *very terms*, the agreement *only* is between the website visitor and *freesamplesprousa.com*, which *isn't even a cognizable legal entity*. A website is not a company that can contract. Such vague language is insufficient to allow either Defendant here to claim it was a beneficiary of such an agreement, let alone put Plaintiff on notice of the same. On this point, *Starling* is again instructive. 2024 WL 1258501, at *5.

In *Starling*, AT&T attempted to compel arbitration of a non-signatory's claims against AT&T under the theory that the non-signatory had been listed as an alternate point of contact for a signatory family member's AT&T account. There, Court rejected a sweeping view of the arbitration agreement that purported to bind "all authorized or unauthorized users or beneficiaries of the Service," as well as the parties' "respective subsidiaries, affiliates, agents, employees, predecessors in interest, successors, and assigns," that AT&T argued rendered the non-signatory family member bound by the agreement. *Starling*, 2024 WL 1258501, at *5. Unlike here, there, each term was carefully and exactingly defined. Nevertheless, Court refused to broaden the scope of the agreement, reasoning a "TCPA claim is not a benefit of a contract for internet service; it is an independent cause of action created by Congress in response to 'a torrent of vociferous consumer complaints about intrusive robocalls.'" *Id.* at *5–*6. That is the case here, and when "Company" only includes a website domain name itself as the *only* contracting party.

While the scope of the claims subject to arbitration on the website may be broad in some places (a premise that is questionable as an initial matter as, unlike in *Starling*, the "agreement"

doesn't even provide the legal names of the parties to the contract purportedly bound by it), the broad scope of the arbitration provision does not broaden the parties to the arbitration agreement beyond the explicit parties named thereon that may have an obligation to arbitrate claims between them. Nor is it at all clear how a consumer, even if they did agree to arbitrate, would go about doing so. The Terms and Conditions don't even name a legal entity or address that so much as identify who freesamplesprousa.com is. It is simply a website that has no legal rights. That infirmity notwithstanding, there is nothing in the arbitration provision that requires the Plaintiff to arbitrate claims directly against either Defendant, who aren't mentioned by name in the Terms and Conditions at all. The rationale for this rule is obvious. Without naming entities to a contract with sufficient specificity and exacting language, a contracting party could rely on any purported arbitration agreement between the "parties" to bind up all manner of family members and associates on the one hand and "affiliated" business on the other, who could hardly be said to benefit from, let alone be aware of, such an agreement, and in so doing, sidestep the common law principle that the parties to a contract need capable of contracting and ascertainable.

Arbitration "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83 (2002); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (arbitration may be compelled "only where the court is satisfied that *the parties* agreed to arbitrate *that dispute*"). This rule stems from the "first principle" that arbitration is "strictly a matter of consent," and thus "is a way to resolve those disputes—*but only those disputes*—that *the parties* have agreed to submit to arbitration." *Granite Rock*, 561 U.S. at 299. Though policy favors arbitration, "policy alone cannot be enough to extend the application of an arbitration clause far beyond its extended scope." *Fuller v. Guthrie*, 565 F.2d 259, 261 (2d Cir. 1977).

Oregon corporate law also controls on this issue. "When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Oregon law prevents businesses from concealing their identity by requiring registration of any "assumed business name" whenever a person transacts business without conspicuously disclosing the person's "real and true name." ORS § 648.005(1)(a), (b). A fictitious web address is not recognized as a "real and true name" under Oregon law. ORS § 648.005(6). A company, like Interest Media, must therefore register an assumed business name or service mark unless is conspicuously discloses the corporation's "real and true name." ORS § 648.007(1), (2). Interest Media's failure to register its FreeSamplesProUSA website domain and name as a fictitious name means that it is barred from even moving to compel arbitration or seek the relief it seeks for its own benefit, that is, seeking judicial relief to enforce a contract, unless and until it complies with Oregon law. ORS § 648.135(1) ("A person who carries on, conducts or transacts business in violation of ORS 648.007 . . . shall lack standing before the courts of this state to maintain a cause of action for the benefit of the business."). Oregon law thus bars Defendants from moving to compel arbitration on this basis *alone*.

In any event, the point remains that the scope of the arbitration provision, by its plain text, isn't even a valid contract because it fails to name a legally cognizable contracting party. Simply put, it's unclear who the website visitor is even contracting with. Certainly, neither SmartMatch nor Interest Media are named. And "freesamplesprousa.com" is a ghost of a fictitious entity incapable of contracting that remains completely unidentified.

An arbitration agreement is to be interpreted on its plain terms; although it may incorporate entities by reference, it cannot be used to bind anyone and everyone associated with

it. *Starling* 2024 WL 1258501, at *5. As a matter of public policy, as supported by well-established Oregon law, therefore, this supposed agreement to arbitrate is not and cannot extend to Defendants. Moreover, because the website did not obtain Plaintiff's consent for Defendants to make telemarketing calls as an initial matter, any purported arbitration language in the website's terms and conditions does not apply to TCPA disputes, nor could it, because TCPA consent rules require naming a *specific seller* on whose behalf consent is obtained. *See Larson v. Harman Mgmt. Corp.*, No. 116CV00219DADSKO, 2016 WL 6298528, at *4 (E.D. Cal. Oct. 27, 2016) (holding that consent in a TCPA case must include disclosure that the consumer is consenting to receive telemarketing calls *from a specific seller*). If there is no consent with respect to a specific seller who made the illegal telemarketing calls at issue here (SmartMatch), there can be no dispute about consent with respect to a *specific seller* for an arbitrator to arbitrate. Thus, even if the Court were to ignore Defendants' complete lack of evidence of a visit by the Plaintiff to the website, there remains no basis to conclude that Defendants themselves (as opposed to a web domain) are signatories or non-signatory-beneficiaries of the arbitration agreement or any other agreement that would have resulted from the website visit, let alone in a manner complying with Oregon law, and Defendants' motion to compel should be denied.

C. *The purported agreement to arbitrate, even if agreed to between Plaintiff and Defendants, is legally defective, which forecloses on the arbitrability of the Plaintiff's claims.*

The purported "browsewrap" agreement to arbitrate based on alleged consent to contact the Plaintiff is legally defective and should not be enforced as a matter of law in any event because the website is insufficiently specific enough to put a website visitor on notice that they are agreeing to an arbitration clause. The hallmark of the enforceability of a clickwrap agreement is the conspicuousness of its notice. *See Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 30 (2d Cir. 2002). An offeree is "not bound by inconspicuous contractual provisions of which he is

unaware, contained in a document whose contractual nature is not obvious." *Id.* Here, the web

form is "browsewrap" because it does not require a checkbox to be checked, and includes a tiny

disclaimer under a large, green "Continue" button. This is insufficient under Ninth Circuit law.

*Cf. Berman v. Freedom Financial Network, LLC*, 30 F. 4th 849, 856 (9th Cir. 2022).

Additionally, and particularly problematically for the Defendant, counsel for the Plaintiff

did not simply take the Defendant at its word but undertook to investigate and video the actual

lead generation form and purported agreement. When counsel for Plaintiff endeavoured to do so,

something peculiar happened: the plaintiff's counsel was able to proceed to submit his

information *without agreeing to the arbitration provision on the website* or any of the terms.

That evidentiary issue aside, which shows it is possible to, *arguendo*, submit information

without agreeing to arbitrate, even an arbitration clause under a big green "Continue" button is

insufficient, as the Ninth Circuit has held, to provide the degree of requisite "conspicuous notice"

of the terms to which the consumer will be bound. Although Defendants rely heavily on

*Dohrmann* and *Lee*, neither involved *any* dispute, as here, about whether plaintiffs accessed the

services. And in both of those cases, the notice was far more adequate than here, where, for

example, the terms were prominently displayed on an uncluttered page, unlike here.

The hallmark of the enforceability of a clickwrap agreement is the conspicuousness of its

notice. *See Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 30 (2d Cir. 2002). An offeree is

"not bound by inconspicuous contractual provisions of which he is unaware, contained in a

document whose contractual nature is not obvious." *Id.* The Ninth Circuit in *Berman* held that

conspicuousness itself has two elements: not only must the notice be in a proper and easily

distinguished font, but also the notice must "prominently display . . . proposed contractual

terms." 30 F. 4th. at 857. Burying contractual terms in small font underneath a large green

"Continue" box is not sufficient. The second prong of the Ninth Circuit's *Berman* test, which the undersigned counsel himself developed, is that the agreement must show an "unambiguous manifestation of assent." *Id.* The agreement here also fails. As explained, clicking "Continue" does not explicitly advise the user "that the act of clicking will constitute assent to the terms and conditions of an agreement." *Id.* The website uses the language "Continue," but doesn't make clear the user is "agreeing" to anything, and it is possible to "Continue" without agreeing to anything at all.

In *Berman*, the Ninth Circuit affirmed the denial of a motion to compel arbitration in a web form with far fewer maladies then here, but where the link had no "conspicuous notice" of the terms to which the consumer will be bound, nor did it "prominently display . . . proposed contractual terms," just like here. 30 F.4th, 849, 856–57. This website in this case is remarkably similar, if not more problematic, than the one in *Arnaud v. Doctor's Assocs. Inc.*, 821 F. App'x 54, 56 (2d Cir. 2020), where court held that a disguised and cluttered link to terms and conditions was insufficient to give notice of a "clickwrap" arbitration provision. *Doctor's Assocs.* and *Berman* are simply two of many cases in the arbitration, TCPA, and consumer protection context where courts reject clickwrap agreements, particularly when their existence is buried, as here.

Procedural and substantive conscionability is still a prerequisite to the enforcement of a clickwrap agreement, and such so-called "dark patterns" of hiding relevant contractual terms from consumers in fine print under a big green button renders such clickwrap agreements unconscionable, and, by extension, unenforceable. This makes this case similar to *Schuchmann v. Great Am. Power LLC*, where the Middle District of Pennsylvania denied a motion to compel arbitration in a TCPA case when "the record as developed so far does not indicate that Plaintiff had been informed of the arbitration clause," based on far less problematic website content than

here. No. 3:23-CV-1604, 2024 WL 219267, at *4 (M.D. Pa. Jan. 19, 2024).

Second, and independently, the arbitration agreement, and any corresponding consent obtained therefrom, is legally deficient because it did not comply with the requirements of the Federal E-SIGN Act, 15 U.S.C. § 7001(c). The FCC's regulations implementing the TCPA require a *signed* writing. 47 C.F.R. § 64.1200(c)(2); 47 C.F.R. § 64.1200(a)(2). Of course, one may elect to obtain electronic consent, including to arbitrate, in lieu of a signed writing. But if one does, that TCPA consent, and any associated arbitration agreement, must comply with the requirements under the E-SIGN Act. 47 C.F.R. § 64.1200(f)(9) (defining prior express written consent and requirements for electronic signatures); *see In re Rules 2012* ¶ 34 ("[C]onsent obtained in compliance with the E-SIGN Act will satisfy the requirements of our revised rule, including permission obtained via [a] website form."). Consent obtained in accordance with the E-SIGN Act's requirements may be sufficient TPCA consent; consent obtained in in violation of those requirements is a legal nullity because it is unsigned. *Id.*

Here, the legal disclosures required by the Act were not included in the websites or purported "Terms of Use" containing the purported arbitration agreement that Defendants have identified. The record is devoid of any evidence even showing an *attempt* to comport with the Act's requirements. Indeed, no part of the website or the "Terms and Conditions" attached to the Defendants' motion indicated the hardware or software requirements for access to and retention of electronic records, nor was any consumer given the opportunity to provide their consent to sign and receive documents electronically. 15 U.S.C. § 7001(c)(1)(C)(i), (ii). Moreover, the website did not give any consumer a "statement" informing them of the procedures for granting or withdrawing consent, or *any* of the other required consumer disclosures, including the very consent to electronic records themselves. 15 U.S.C. § 7001(c), (c)(1).

A defendant lost a motion for summary judgment on substantively similar issue in *Mantha v. QuoteWizard.com, LLC*, No. CV 19-12235-LTS, 2021 WL 6061919, at *8 (D. Mass. Dec. 13, 2021), based on a substantially similar agreement to that proffered here. In *Mantha*, the Court held that the consent to make calls purportedly obtained via a website was legally deficient because it did not meet the requirements of the E-SIGN Act. *Id.* As a result, in *Mantha*, the court entered partial summary judgment *on behalf of a plaintiff* on the issue of consent. *Id.* As the Court held in *Matha*, such a failure to obtain the required E-SIGN disclosures is fatal to compliance with the E-SIGN Act and therefore cannot constitute express written consent. *Id.* Relatedly, a failure to do so is also dispositive of the enforceability of the arbitration provision as no legally-binding contract formed as an initial matter. Yet another court similarly denied relief to the defendant at summary judgment based on a nearly identical failure to comply with E-SIGN's requirements. *Bradley v. DentalPlans.com*, No. CV 20-1094-BAH, 2024 WL 2865075, at *7 (D. Md. June 6, 2024). Therefore, even if the Court were to ignore Defendants' complete lack of evidence of Plaintiff's factual agreement to arbitrate, there is no basis to conclude that the purported agreement was legally sufficient. Because any alleged agreement to arbitrate did not provide conspicuous notice of the arbitration provision, and because the contract does not comply with the provisions of the E-SIGN Act, the Court must also deny the Defendant's motion on independent legal grounds, even if the Court were to hold, *arguendo*, that the Plaintiff agreed to arbitrate something as a factual matter.

D. *The class claims ought not be struck because of the aforementioned legal issues.*

Defendant relatedly argues that the class claims here ought to be struck because the Plaintiff agreed to a class action waiver. However, as explained above, the Plaintiff disputes having submitted her information, and correspondingly, any waiver associated thereto. Also as explained above, the presence of a class action waiver and arbitration clause do not necessitate

any form of individualized determination. Courts are virtually unanimous in their recognition that, when a common legal issue exists which calls into question contractual formation, as here, those issues are not individualized but rather are uniform across all class members.

Here, assuming that the Defendant *actually* obtained a website visit *of some sort*, a proposition which is itself disputed (see footnote 1, *supra*), there remain uniform legal issues as to the adequacy of notice and whether a valid contract even formed, owing to the non-E-SIGN Act-compliant nature of the electronic contract itself. Those questions can be uniformly answered on a class basis. *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 570 (W.D. Wash. 2012) (rejecting "individualized issues" argument based on TCPA consent and citing cases); *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 648 (W.D. Wash. 2007) (same); *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 95 (3d Cir. 2011) ("The possibility that some of the individuals on the list may separately have consented to the transmissions at issue is an insufficient basis for denying certification."); *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009) (mere possibility of consent does not preclude class certification). And to the extent Defendant takes issue with the Plaintiff's class definition as pled, defendant gets the analysis wrong. The *inclusion* of language that the Defendant seems to want and which excludes from the class any person that is subject to the contract is impermissible. *See Sauter v. CVS Pharmacy, Inc.*, No. 2:13-cv-846, 2014 WL 1814076, at *8-9 (S.D. Ohio May 7, 2014). In any event, this issue is a red herring that is premature and is a factual issue more appropriately suited to class certification. Should any issues remain, the proper course is to permit amendment.

## CONCLUSION

For all of the foregoing reasons, arbitration should not be compelled and the class not struck. If any questions remain, the Court should order discovery or amendment.

Oppn. to Motions                                    20

RESPECTFULLY SUBMITTED AND DATED this 23rd day of October, 2025.

s/Andrew Roman Perrong
Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
Lead Attorney for Plaintiff and the Proposed Class

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date.

Dated: October 23, 2025

s/Andrew Roman Perrong
Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
Lead Attorney for Plaintiff and the Proposed Class